# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

ANALYTICAL SURVEYS, INC.,

               Plaintiff,

    v.

TONGA PARTNERS, L.P., CANNELL
CAPITAL LLC, and J. CARLO CANNELL,

               Defendants.

Civil Action No. 06-cv-2692
(KMW) (RLE)

---

## DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF THEIR MOTION FOR
## RECONSIDERATION PURSUANT TO FEDERAL RULE OF
## CIVIL PROCEDURE 59(E) AND LOCAL CIVIL RULE 6.3

---

Steven M. Hecht (SH-0414)
Sally J. Mulligan (SM-4480)
**LOWENSTEIN SANDLER PC**
1251 Avenue of the Americas
New York, New York  10020
-and-
65 Livingston Avenue
Roseland, New Jersey  07068
Tel.: 973.597.2500
Fax: 973.597.2400
*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT............................................................................................................ 2

I.     THE SECOND CIRCUIT'S DECISION IN *ROTH* IS NEW CONTROLLING LAW AND IS A PROPER BASIS FOR DEFENDANTS' MOTION FOR RECONSIDERATION .................................... 2

II.    ARGUMENTS MADE BY ASI'S OWN LAWYERS MAKE CLEAR THAT *LEVY II* WAS A DEFINITIVE RULING THAT EXPANDED THE SCOPE OF RULE 16B-3(D) TO INCLUDE THE TRANSACTIONS AT ISSUE IN THIS CASE .................................................... 4

III.   BASED ON THE NEW LAW IN *ROTH* AND *LEVY II*, THERE IS NO DOUBT THAT THE TRANSACTIONS AT ISSUE ARE EXEMPT BY VIRTUE OF RULE 16B-3(D) ...................................................... 6

IV.   TONGA IS A DIRECTOR BY DEPUTIZATION ............................................. 7

      A.     Tonga Meets The Substantive Criteria For Directors By Deputization ........................................................................... 7

      B.     Mr. Cannell's Deposition Testimony Does Not Undermine ASI's Own Admission That Tonga Was A Deputized Director ................ 8

V.    THE DOCTRINES OF JUDICIAL ADMISSIONS AND JUDICIAL ESTOPPEL DO NOT APPLY HERE.................................................... 9

CONCLUSION....................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

CASES                                                                          PAGES

*Blau v. Lehman*,
    368 U.S. 403 (1962).................................................................................. 8

*Colan v. Cutler Hammer, Inc.*,
    1986 U.S. Dist. LEXIS 25091 (N.D. Ill. May 23, 1986) ...................................... 8

*Doe v. N.Y. City Dep't of Soc. Servs.*,
    709 F.2d 782 (2d Cir. 1983)........................................................................ 2

*Dreiling v. Am. Express Travel Related Servs. Co.*,
    351 F. Supp. 2d 1077 (W.D. Wa. 2004) ........................................................ 3

*Dreiling v. Am. Express Co.*,
    458 F.3d 942 (9th Cir. 2006)................................................................... 3, 5

*Feder v. Martin Marietta Corp.*,
    406 F.2d 260 (2d Cir. 1969).................................................................... 4, 7

*Gryl v. Shire Pharm. Group PLC*,
    298 F.3d 136 (2d Cir. 2002)....................................................................... 4

*Keller v. United States*,
    58 F.3d 1194 (7th Cir. 1995).................................................................... 10

*Kramer v. Time Warner, Inc.*
    937 F.2d 767 (2d Cir. 1991)....................................................................... 5

*Lasker v. Pyle-Nat'l Co.*,
    1966 U.S. Dist. LEXIS 10064 (S.D.N.Y. May 3, 1966) ...................................... 8

*Levy v. Sterling Holding Company, LLC*,
    314 F.3d 106 (3d Cir. 2002) ...................................................................... 5

*Levy v. Sterling Holding Company, LLC*,
    544 F.3d 493 (3d Cir. 2008) ...............................................................*passim*

*Lewis v. Dekcraft Corp.*,
    1974 U.S. Dist. LEXIS 7862 (S.D.N.Y. June 27, 1974) ................................... 7, 8

*Mitchell v. Washingtonville Cent. Sch. Dist.*,
    190 F.3d 1 (2d Cir. 1999)........................................................................ 10

*Rattner v. Lehman*,
    193 F.2d 564 (2d Cir. 1952) .................................................................................. 8

*Rodal v. Anesthesia Group of Onondaga, P.C.*,
    369 F.3d 113 (2d Cir. 2004) .............................................................................. 10

*Roth v. Perseus, L.L.C.*,
    2006 U.S. Dist. LEXIS 52321 (S.D.N.Y. July 31, 2006) ...................................... 7

*Roth v. Perseus, L.L.C.*,
    522 F.3d 242 (2d Cir. 2008) .................................................................*passim*

*Segen v. CDR-Cookie Acquisitions, LLC*,
    2006 U.S. Dist. LEXIS 3053 (S.D.N.Y. Jan. 4, 2006) ..................................... 3, 7

*Shattuck Denn Mining Corp. v. La Morte*,
    1974 U.S. Dist. LEXIS 9621 (S.D.N.Y. Mar. 8, 1974) ........................................ 8

*Standard Inv. Chartered, Inc. v. NASD*,
    2007 U.S. Dist. LEXIS 71287 (S.D.N.Y. Sept. 26, 2007) .................................... 5

RULES & REGULATIONS

17 C.F.R. § 240.16b-3 ............................................................................*passim*

Fed. R. Civ. P. 59(e) .......................................................................................... 4

L. Civ. R. 6.3 ...................................................................................................... 4

OTHER AUTHORITIES

Peter J. Romeo & Alan L. Dye, *Section 16 Treatise and Reporting Guide* (3d. ed. 2008)............ 4

## PRELIMINARY STATEMENT

Under the Second Circuit's new decision in *Roth v. Perseus, L.L.C.*, 522 F.3d 242 (2d Cir. 2008) ("*Roth*") and the Third Circuit's new decision in *Levy v. Sterling Holding Company, LLC*, 544 F.3d 493 (3d Cir. 2008) ("*Levy II*") -- both of which were decided long after the parties briefed their summary judgment motions in this case -- there is no question that Defendants' acquisition of securities from Plaintiff ASI[1] is exempt from Section 16(b) pursuant to Rule 16b-3(d), which exempts transactions between an issuer and its officers and directors if such transactions are approved by the issuer's board.

Realizing that the transactions at issue fit squarely within Rule 16b-3(d)'s exemption under the new controlling law in *Roth*, ASI spends most of its opposition brief urging that the motion should be denied on procedural grounds.  Plaintiff claims that Defendants could have argued under pre-existing case law that Rule 16b-3(d) applied to the transactions at issue and the motion for reconsideration is therefore an improper second bite at the apple.  ASI then makes a half-hearted attempt to argue that Tonga does not meet the substantive requirements for a director by deputization.  ASI is wrong on both grounds.

The motion should not be denied on procedural grounds, as the Second Circuit's decision in *Roth* is indeed new controlling law in this Circuit.  In that case, the Second Circuit resolved a novel issue of law and squarely held for the first time that Rule 16b-3(d) applied to directors by deputization who also own more than 10% of a company's stock -- as Tonga did here.  Thus, ASI cannot dispute that *Roth* is new controlling law upon which Defendants' motion for reconsideration is properly based.

The decision in *Levy II* is equally compelling.  This is not merely the say-so of Defendants' counsel; indeed, Plaintiff's counsel themselves -- who actually represented the plaintiff-appellant in *Levy II* -- argued in that case (well after the briefing was completed in this case) that Rule 16b-3(d) did *not* apply retroactively to non-compensatory transactions, such as

---

[1]   Capitalized terms used but not defined herein have the meanings given to them in Defendants' moving brief.

those at issue in this case.  Accordingly, Plaintiff's counsel themselves are forced to admit, by their own hand, that the law was not clear until *Levy II* was decided, and that all remaining ambiguity in the law was resolved only when *Levy II* held -- just days after the Court rendered its September 26, 2008 decision in this case -- that Rule 16b-3(d) did apply retroactively to non-compensatory transactions.  Thus, there is no longer any question that the transactions at issue here are exempt pursuant to Rule 16b-3(d).

With respect to the substance of Defendants' motion, ASI relies on outdated and inapposite cases in attempting to argue that Tonga is not a director by deputization.  Under recent case law in this Circuit setting forth the criteria for determining when to recognize a director by deputization -- which ASI fails to cite in its brief -- Tonga plainly meets the criteria for a director by deputization because it was given the right to appoint three directors (*i.e.*, a majority) to ASI's board in connection with its investment in ASI and in fact exercised this right, as ASI itself admits in its own public filings.  These facts alone are more than sufficient to establish that Tonga is a director by deputization.  ASI also attempts to rely on isolated, out-of-context snippets of testimony from Mr. Cannell's deposition to suggest that Tonga is not a director by deputization.  However, when put in proper context, Mr. Cannell's testimony does nothing to undermine the undisputed fact that Tonga was given the right to appoint three directors to ASI's board and in fact exercised this right.

In the absence of any cognizable prejudice to Plaintiff, it would be manifestly unjust to prevent Defendants from enjoying the protections afforded by Rule 16b-3(d) when the SEC clearly intended to exempt the transactions at issue in this case from the purview of Section 16(b), as the Second and Third Circuits have now finally held.  The now clarified law establishes beyond dispute that Defendants have no short-swing disgorgement liability.

## ARGUMENT

**I.    THE SECOND CIRCUIT'S DECISION IN *ROTH* IS NEW CONTROLLING LAW AND IS A PROPER BASIS FOR DEFENDANTS' MOTION FOR RECONSIDERATION**

It is well established that reconsideration is appropriate if there is an intervening change in controlling law. *See Doe v. N.Y. City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983). Here, there is no question that the Second Circuit's decision in *Roth* changed controlling law in the Second Circuit and made the transactions at issue in this case exempt from Section 16(b) pursuant to Rule 16b-3(d).

ASI argues that Defendants' motion for reconsideration is an improper attempt to present a new defense that should have been raised previously. (Pl. Br. at 7-12). Specifically, ASI urges that given the decision in *Segen v. CDR-Cookie Acquisitions, LLC*, 2006 U.S. Dist. LEXIS 3053 (S.D.N.Y. Jan. 4, 2006), and the Ninth Circuit's decision in *Dreiling v. Am. Express Co.*, 458 F.3d 942 (9th Cir. 2006) ("*Dreiling II*"), as well as the district court's decision in that action, *Dreiling v. Am. Express Travel Related Servs. Co.*, 351 F. Supp. 2d 1077 (W.D. Wa. 2004) ("*Dreiling I*"), Defendants should have argued earlier that Rule 16b-3(d) applied to the transactions in this case. ASI misses the point.

While *Segen, Dreiling I,* and *Dreiling II* may have been decided while this case was pending, none of those cases was controlling authority in the Second Circuit. Indeed, *Segen* is an unpublished decision and *Dreiling I* and *Dreiling II* are merely persuasive authority from another Circuit. The simple fact is that before *Roth* was decided, there was no controlling authority in the Second Circuit on the novel issue presented in this case -- whether Rule 16b-3(d) applies to directors by deputization **who also own more than 10% of a company's stock**, as is true of Tonga here.

Indeed, prior to *Roth*, the Second Circuit's decisions in this area suggested that Rule 16b-3(d)'s exemption was not available to an entity like Tonga that was not an actual officer or director of the company and that owned more than 10% of the company's stock. *See Gryl v. Shire Pharm. Group PLC*, 298 F.3d 136, 141 (2d Cir. 2002) (for Rule 16b-3(d) exemption to apply, "defendant must be a director or officer of the issuer at the time of the transaction"); *Feder v. Martin Marietta Corp.*, 406 F.2d 260, 266-67 (2d Cir. 1969) ("[T]he statute evidences a clear legislative intent to treat corporate directors and officers in one category

of insiders and 10% shareholders in another.").  Indeed, because *Gryl* gave no indication that Rule 16b-3(d) could apply to directors by deputization -- a concept that was well established prior to the *Gryl* decision -- and *Feder* made a clear distinction between the intended treatment of directors versus 10% owners under Section 16(b), the Second Circuit's pre-*Roth* authority suggested that Rule 16b-3(d) did not apply to Defendants in this case.[2]

In *Roth*, the Second Circuit decisively held, ***for the first time***, that the Rule 16b-3(d) exemption is available to a director by deputization who also holds more than 10% of the issuer's publicly traded shares, concluding that "owning more than 10% of a company's listed stock does not strip an officer, director or director by deputization of the protections otherwise afforded by Rule 16b-3(d)."  *Roth*, 522 F.3d at 248.  This was a novel issue addressed by the Second Circuit for the first time in *Roth*.  Indeed, if this had been a settled area of the law in this Circuit, the Second Circuit would not have had to decide it.[3]

## II.     ARGUMENTS MADE BY ASI'S OWN LAWYERS MAKE CLEAR THAT *LEVY II* WAS A DEFINITIVE RULING THAT EXPANDED THE SCOPE OF RULE 16b-3(d) TO INCLUDE THE TRANSACTIONS AT ISSUE IN THIS CASE

ASI contends that at the time Defendants filed their Answers in this action, the law was "perfectly clear" that Rule 16b-3(d) (as amended by the SEC in 2005) applied retroactively to non-compensatory transactions, and therefore the Third Circuit's recent decision

---

[2]   In addition, contrary to Plaintiff's assertion that Section 16(b)'s leading commentators believed that is was a foregone conclusion that Rule 16b-3(d) applied to directors by deputization, prior to the Second Circuit's decision in *Roth*, these commentators in fact noted that "there is a lingering question whether a director by deputization is a 'director' for purposes of Rule 16b-3."  Peter J. Romeo & Alan L. Dye, *Section 16 Treatise and Reporting Guide* § 14.02[2][c] (3d. ed. 2008).

[3]   ASI also attempts to argue that the SEC's amicus brief in *Dreiling II* -- in which the SEC argued that Rule 16b-3(d) applied to directors by deputization -- is "controlling authority" in this Circuit and Defendants should have relied upon it to make an argument that Rule 16b-3(d) applied in this case.  (Pl. Br. at 11).  To the contrary, it is black-letter law that "for purposes of Rule 59(e) . . . and Local Civil Rule 6.3, controlling authority is comprised of decisions from the Second Circuit Court of Appeals" -- not SEC amicus briefs.  *Evergreen Mut. Funds Fee Litig.*, 240 F.R.D. 115, 118 (S.D.N.Y. 2007).

in *Levy II* is of no consequence here.  (Pl. Br. at 14-16).  However, ASI's claim that the law was perfectly clear is flatly contradicted by the conduct of its own lawyers.

   ASI's lawyers, Abraham, Fruchter & Twersky LLP, represented the plaintiff-appellant in *Levy II*.  Far from claiming that the law was "perfectly clear" as they do today, as late as March of 2008, when the Third Circuit heard oral argument in *Levy II* (and after the briefing in this case was completed), Abraham, Fruchter & Twersky argued the exact *opposite* position -- that Rule 16b-3(d) did *not* apply retroactively to non-compensatory transactions.  In fact, Abraham, Fruchter & Twersky went so far as to argue that the SEC's 2005 amendments to Rule 16b-3(d) exceeded the SEC's rulemaking authority and the revised rule should be disregarded.  (Declaration of Sally J. Mulligan, Esq., Ex. A (*Levy II* Moving Brief) at 22, 29-45, 57-63).[4]  If, as ASI now urges, the law had been so clear during the summary judgment phase in this case that Rule 16b-3(d) applied retroactively to non-compensatory transactions, then why were ASI's own lawyers arguing that the law was the complete opposite in the *Levy II* case?

   The simple answer -- as ASI must now admit -- is that the law was *not* clear until *Levy II* was decided.  Indeed, there was a split between the Third Circuit and the Ninth Circuit on this issue, which was only resolved when the Third Circuit's decision was issued in *Levy II* on October 1, 2008 -- just days after the Court issued its September 26, 2008 opinion in this case. *Compare Levy v. Sterling Holding Company, LLC*, 314 F.3d 106 (3d Cir. 2002) ("*Levy I*"), *with Dreiling II,* 458 F.3d at 953-54*.  Levy II* made clear that revised Rule 16b-3 was within the scope of the SEC's rulemaking authority and that it applied retroactively to the non-compensatory

---

[4] Abraham, Fruchter & Twersky's appellate brief in *Levy II* is a matter of public record and the Court is permitted to take judicial notice thereof.  *See Kramer v. Time Warner, Inc.* 937 F.2d 767, 774 (2d Cir. 1991).  However, as noted in Defendants' moving brief, in the event that the Court interprets the Defendants' reliance on such document as the submission of new evidence, Defendants respectfully request that the Court grant Defendants permission to submit such materials in order to prevent the manifest injustice that would result if Defendants are forestalled from advancing the arguments set forth herein.  *See Standard Inv. Chartered, Inc. v. NASD*, 2007 U.S. Dist. LEXIS 71287, at *26 (S.D.N.Y. Sept. 26, 2007) (a party may submit new evidence in connection with a reconsideration motion with the court's permission).

transactions at issue in this case.  While *Levy II* may not be controlling law in this Circuit, the Third Circuit's decision in *Levy II* was a definitive ruling in Section 16(b) jurisprudence that finally clarified (and expanded) the scope of Rule 16b-3(d) and resolved all ambiguities that previously existed in case law on this issue as a result of the Circuit split.

**III.    BASED ON THE NEW LAW IN *ROTH* AND *LEVY II*, THERE IS NO DOUBT THAT THE TRANSACTIONS AT ISSUE ARE EXEMPT BY VIRTUE OF RULE 16b-3(d)**

Rule 16b-3(a) and (d) provide in pertinent part that "[a]ny transaction . . . involving an acquisition [by an officer or director] from the issuer . . . shall be exempt if . . . [t]he transaction is approved by the board of directors of the issuer . . . ."  17 C.F.R. § 240.16b-3(d)(1).  Here, in connection with Tonga's original acquisition of a $2 million convertible note from ASI, Tonga was given the right to appoint three of the five directors to ASI's board of directors, or a majority of the board.  (*See* Hecht Decl. Ex. 3 at 48).  Tonga exercised this right, and appointed J. Livingston Kosberg, Christopher D. Illick and Christopher S. Dean to ASI's board, thereby gaining control of the corporation.  (*Id.*).  These directors remained on ASI's board until at least December 2004, after Tonga converted the Second Amended 2002 Note and sold all of its shares of ASI stock in November 2004.  (*Id.*).  Accordingly, Tonga is considered a "director by deputization" for purposes of Section 16(b) and is considered a "director" for purposes of Rule 16b-3(d) even though it held more than ten percent of ASI's stock.  *See Roth*, 522 F.3d at 248.

In June 2004, ASI's board of directors approved the restructuring of the First Amended 2002 Note and the issuance of the Second Amended 2002 Note.  (*See* Hecht Decl. Ex. 2).  Thus, ASI's board of directors approved the transaction whereby Tonga acquired the Second Amended 2002 Note in June 2004, which Tonga converted to acquire the securities at issue in this case.  (*See id.* Ex. 1 at 6) ("Only the 1,701,341 shares obtained upon Tonga's conversion of the June 2004 Note are at issue in this case.").  Accordingly, Tonga, a deputized director, acquired the securities at issue from ASI, and ASI's board approved the transaction whereby Tonga acquired those securities, thus making it (i) an acquisition by an officer or director from

the issuer, which (ii) was approved by the board of directors of the issuer, meeting *Roth's* requirements for the exemption.  As to retroactivity, there is now no doubt under *Levy II* that the 2005 amendments to Rule 16b-3(d) apply retroactively to these 2004 transactions.

### IV.     TONGA IS A DIRECTOR BY DEPUTIZATION

Plaintiff argues that even if Defendants have satisfied the procedural standards for reconsideration, Rule 16b-3(d) does not apply here because Tonga was not a director by deputization of ASI.  (Pl. Br. at 16-20).  ASI further argues that Mr. Cannell admitted in his deposition that Tonga was not a director by deputization.  (*Id.*)  Both arguments fail.

#### A.     Tonga Meets The Substantive Criteria For Directors By Deputization

ASI urges that Tonga does not meet the criteria for a director by deputization.  However, this Court's decisions in this area plainly hold that an entity's appointment of one or more representatives to the issuer's board of directors as a result of that entity's becoming a controlling shareholder is sufficient evidence to support a finding of deputization.  For example, in *Lewis v. Dekcraft Corp.*, 1974 U.S. Dist. LEXIS 7862 (S.D.N.Y. June 27, 1974), this Court held that deputization was established based on the undisputed facts that the deputizing company had acquired 36% of the issuer, thereby gaining control, and pursuant to that transaction gained and exercised the right to appoint four members to the issuer's board.  The *Dekcraft* court concluded that such facts were "far more compelling than the facts which led the Court of Appeals in *Feder* to conclude that the district court's finding of no deputization was clearly erroneous."  *Id.* at *8; *see also Segen*, 2006 U.S. Dist. LEXIS 3053, at *23-24 (finding deputization where defendants acquired controlling interest and thereby secured right to appoint three directors to the board, which right they then exercised, all according to public filings).[5]

---

[5]     The cases on which Plaintiff relies are inapposite.  In those cases, deputization was not found because the officer of a corporation or the partner of a partnership was already sitting on the issuer's board at the time the corporation or partnership acquired the issuer's shares.  *See Blau v. Lehman*, 368 U.S. 403 (1962); *Rattner v. Lehman*, 193 F.2d 564, 566 (2d Cir. 1952); *Colan v. Cutler Hammer, Inc.*, 1986 U.S. Dist. LEXIS 25091, at *13 n.9 (N.D. Ill. May 23, 1986), *aff'd per curiam*, 812 F.2d 357 (7th Cir.); *Lasker v. Pyle-Nat'l Co.*, 1966 U.S. Dist. LEXIS 10064, at *3 (S.D.N.Y. May 3, 1966); *Shattuck Denn Mining Corp. v. La Morte*,

The facts in this case are on all fours with *Dekcraft* and its progeny.  It is undisputed that Tonga was given the right to appoint a majority of the board of directors as a result of its acquiring a controlling interest in ASI.  Moreover, it is undisputed that Tonga in fact exercised this right, as ASI itself admits in its own public filings.  (Hecht Decl. Ex. C at 19) ("Tonga has appointed three members to the Board and as a result, controls ASI.").  These facts are more than sufficient to establish that Tonga was a director by deputization.

> **B.**     **Mr. Cannell's Deposition Testimony Does Not Undermine ASI's Own Admission That Tonga Was A Deputized Director**

Plaintiff's reliance on two carefully edited snippets of Mr. Cannell's testimony is misplaced.  Once Mr. Cannell's testimony is read in context, it does not contradict ASI's admissions in its own public filings that Tonga was a deputized director.

In providing just a solitary Q&A citation, ASI deliberately failed to provide the immediately preceding question and answer, as well as some subsequent questioning, which puts Mr. Cannell's testimony in its proper context:

> Q:     Was there anybody on the board of directors who advocated on behalf of Tonga or Cannell in its relationship with Analytical?
>
> ***
>
> A:     ***I don't know.***  I do know that not only in this company, but in general, we go out of our way to make sure that we are not privy -- we are not in receipt of material, nonpublic information.  So it's impossible for me to know what the board was thinking and doing, what they weren't.  I recall earlier that I testified that my primary question to board members is what other companies they invest in.
>
> Q:     Was anybody on the board of directors of Analytical acting as Cannell's agent on the board?
>
> A:     No.

(Deposition of J. Carlo Cannell at 44:4-44:21) (emphasis added).  In this first question -- which

---

1974 U.S. Dist. LEXIS 9621 (S.D.N.Y. Mar. 8, 1974).  Here, in contrast, ASI has admitted in its own SEC filings that Tonga was given the right to and did appoint three directors to ASI's board in connection with its acquisition of a controlling interest in ASI.  (Hecht Decl. Ex. 3 at 19).

ASI omits from its brief -- Mr. Cannell stated that he did not know whether anyone on the board was "advocating" on Tonga's behalf.  Then, in what seemed to be a related question, ASI's lawyer never defined the term "agent," thus making it impossible to determine just what Mr. Cannell understood that word to mean when he answered the question "No."  Given his immediately preceding testimony, Mr. Cannell was likely focusing on the issue of whether he had received non-public material information, and his negative answer to the "agent" question suggests that Mr. Cannell testified that Cannell Capital did not have any "advocates" or other "agents" on ASI's board who were attempting to obtain material, nonpublic information.  In proper context, Mr. Cannell's testimony reflects that he was concerned that the directors appointed to the board by Tonga refrained from any nefarious conduct (whether improperly using material non-public information or otherwise breaching their fiduciary duty to the company) and not put Tonga's interest ahead of the company's interests.[6]

In any event, Mr. Cannell's answer is hardly a refutation -- nor could it be -- that Tonga had appointed three outside directors to ASI's board of directors in connection with its acquisition of a controlling interest in the company, a fact admitted by ASI's own public disclosures to its investors.  (Hecht Decl., Ex. C at 19).

## V.   THE DOCTRINES OF JUDICIAL ADMISSIONS AND JUDICIAL ESTOPPEL DO NOT APPLY HERE

ASI argues that Defendants' are precluded from arguing that Tonga is a director by deputization under the doctrines of judicial estoppel and judicial admissions.  ASI is again wrong on both counts.

---

[6]   Likewise, Plaintiff's selective citation to Mr. Cannell's testimony about Kosberg, which followed shortly after this question, also demonstrates that the testimony fails to undermine Tonga's status as a director by deputization.  Mr. Cannell testified that Mr. Kosberg (one of Tonga's board appointees) was a "very ethical, honorable man," and then testified that Mr. Kosberg did not act as Tonga's "agent" on the board.  (Pl. Br. at 17; Cannell Dep. at 48:13).  Once again, this suggests that in response to Plaintiff's questions about whether Tonga had advocates or agents on the board, Mr. Cannell appears focused not on whether Mr. Kosberg was Tonga's representative on the board, but whether Mr. Kosberg was attempting to nefariously obtain material, non-public information on behalf of Tonga (which Mr. Cannell believed he would not do).

"The doctrine of judicial estoppel prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding." *Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004). Thus, "'[a] party invoking judicial estoppel must show that (1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (2) *that position was adopted by the first tribunal in some manner, such as by rendering a favorable judgment.*'" *Id.* (emphasis added) (citation omitted). Here, ASI argues that Mr. Cannell's testimony is inconsistent with Defendants' assertion that Tonga is a director by deputization and is thus barred under the doctrine of judicial estoppel. (Pl. Br. at 21). ASI is wrong. There is nothing in the record to suggest that Mr. Cannell's testimony was ever adopted by this Court in any manner.

Likewise, the doctrine of judicial admissions is inapplicable. Judicial admissions, such as stipulations or answers to contention interrogatories, are answered with the assistance of counsel and have the effect of precluding entire legal issues from a case. *Prince Group, Inc. v. MTS Products*, 1998 U.S. Dist. LEXIS 7835, at * 7-8 (S.D.N.Y. May 27, 1998). There are "critical distinctions" between evidentiary admissions and judicial admissions. "Evidentiary admissions, such as answers at depositions or during trial testimony, can later be contradicted and explained." *Id.* Mr. Cannell's deposition testimony is an evidentiary statement -- not a judicial admission -- that can be further explained. *Id.* The doctrine of judicial admissions is irrelevant here.

## CONCLUSION

Defendants respectfully request that the Court reconsider and reverse its decision granting summary judgment in favor of Plaintiff, and the resulting judgment entered pursuant thereto, and instead order that the transactions at issue are exempt from Section 16(b) pursuant to Rule 16b-3(d).

Respectfully submitted,

**LOWENSTEIN SANDLER PC**

Dated:  January 30, 2009                     By: s/Steven M. Hecht